IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CLOYD GARTH                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 1:17-CV-94-SA-DAS

MAC CURLEE, and
ABERDEEN SCHOOL DISTRICT                                            DEFENDANTS

ORDER AND MEMORANDUM OPINION

Cloyd Garth filed his Complaint [1] in this Court on June 26, 2017, alleging various Constitutional and Civil Rights violations related to his termination as Principal for the Aberdeen School District on June 2, 2017. Now before the Court is Defendant Mac Curlee's Motion to Dismiss [59] on the Basis of Qualified Immunity, Motion to Grant [63] Defendant's Motion to Dismiss on the Basis of Qualified Immunity as Confessed, and Defendants' Motion for Summary Judgment [55].

*Factual and Procedural Background*

In 2012, Governor Phil Bryant declared a state of emergency in the Aberdeen, Mississippi School District due to poor student performance and the District's inability to pay its bills. When the Governor declares a state of emergency in a school district, the Mississippi State Board of Education may assign a conservator to the school district. MISS. CODE ANN. § 37-17-6(12)(c)(ii). Once assigned, the conservator acts as both the superintendent and the school board, and has the authority to enter into contracts on behalf of the school district. The conservator is then responsible for the administration, management, and operation of the school district. *See* MISS. CODE ANN. § 37-17-6(15)(a). Following the Governor's declaration, the Mississippi Department of Education took control of the District and appointed a conservator, Robert Strebeck, in 2012. In the fall of

2013, Mac Curlee was appointed as conservator to the Aberdeen School District. In July of 2014, Curlee hired the Plaintiff, a black male, as the principal of Aberdeen High School.

On July 1, 2016, the Mississippi Department of Education selected a school board ("Board") to serve in an advisory capacity and undergo training prior to taking full control of the District on July 1, 2017. In December 2016, the District hired the Mississippi School Board Association ("MSBA") to assist with the District's search for a new District superintendent for the 2017-2018 school year, in anticipation of the District returning to local control on July 1, 2017. The MSBA publicized the search and received applications. During the search for a new superintendent, the Plaintiff, while still working as Principal, conveyed his interest in the superintendent position to Curlee.

After collecting the applications of interested parties, the MSBA then presented the applications to the Board, which then selected five candidates to interview. The Plaintiff was one of the candidates selected for interviews. On May 9, 2017, the Board met in executive session and unanimously chose Jeff Clay, a white male, to serve as superintendent. At the time of the Board's vote, the conservatorship was still in place and the Board was acting solely in an advisory capacity. *See* MISS. CODE ANN. § 37-17-6(15)(a). As Conservator, Curlee held the ultimate and singular authority to select the new superintendent and, upon the recommendation from the Board, Curlee selected Clay as the superintendent for the 2017-2018 school year. *Id.*

On May 11, 2017, at the request of the Board, Curlee met with the Plaintiff to notify him of the selection of Clay as the new superintendent. According to the Plaintiff, Curlee told the Plaintiff that he expected him to encourage the African-American community to accept Clay as the new superintendent and to help smooth over his selection with the African-American community. The Plaintiff expressed his belief that Clay was the wrong choice and responded that

it was not his job to garner support for Clay in the local community. District Counsel, Nathaniel Armistad, later met with the Plaintiff who assured him that despite his opinions on Clay's selection, he had no problems working with Clay.

On May 11, Curlee also evaluated the Plaintiff's performance and rated the Plaintiff at a 3.68 on a 4.0 scale. Following the evaluation, Curlee extended the Plaintiff a new contract for the 2017-2018 school year, July 1, 2017, through June 30, 2018.

On May 25, 2017, the District's CFO (Straughter-Campbell) brought concerns with the Plaintiff's noncompliance with the District's time trust system to Curlee. The Plaintiff's issue with the Time Trust system arose because instead of clocking himself in and out, the Plaintiff frequently had Ilana Randle clock him in and out a total of 164 times between November 3, 2014, and June 3, 2017.[1] *See* [55-18]. On June 2, 2017, Curlee and Armistad met with the Plaintiff to discuss the District's Time Trust system, which all District employees were required to use to clock in and out. Curlee asked the Plaintiff to explain why Randle was clocking him in and out so frequently. After hearing the Plaintiff's responses, Curlee gave the Plaintiff the option to either resign or be terminated. The Plaintiff refused to continue the conversation. Curlee terminated the Plaintiff on June 2, 2017, for violating District procedures regarding time clock and payroll procedures. Specifically, Curlee terminated the Plaintiff for "failure to refrain from falsifying records (payroll/time sheet information) or directing others to do so in violation of Standard 2.2(b) of the Mississippi Code of Ethics."

---

[1] Although the Plaintiff did not raise it, the only other time edits were made by Leigh Todd and Bobby Eiland, who made edits 27 times and 22 times, respectively, during the same time period. *See* [55-17] at 19:17; 19:24; 22:18.

*Procedural Posture*

On June 20, 2018, the Defendants' filed a Motion for Summary Judgment [55] on all four of the Plaintiff's claims: 1) Fourteenth Amendment procedural due process claim brought under 42 U.S.C. § 1983, 2) race discrimination, 3) First Amendment retaliation, 4) state law breach of contract. On June 26, 2018, Defendant Curlee filed a Motion to Dismiss [59] on the basis of qualified immunity on all four claims. While the Motion [59] is styled as a motion to dismiss, Curlee presented matters outside the pleadings and, as such, the Court will consider the motion as one for summary judgment. *See* FED. R. CIV. P. 12(d). Because the Plaintiff failed to file a response to Curlee's Motion, Curlee filed a Motion to Grant [63] Defendant's Motion as confessed.

Rule 56 makes it clear that there is "no summary judgment by default" and even a complete lack of a response by the Plaintiff does not alter the Court's summary judgment inquiry. *See* FED. R. CIV. P. 56; *Calais v. Theriot*, 589 F. Appx. 310, 311 (5th Cir. 2015); *Hibernia Natl. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

*Standard of Review*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P 56(a). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted).

The normal "summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 Fed. Appx. 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). Where a defendant seeks dismissal based on qualified immunity, the complaint is subject to a heightened pleading requirement, *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995), as follows: "'[T]o survive [a motion to dismiss],' a plaintiff must plead the defendant alleged constitutional violations 'with factual detail and particularity, not mere conclusionary allegations.'" *Wells v. Newkirk-Turner*, No. 3:13-CV-733-DPJ, 2014 WL 5392960, at *3 (S.D. Miss. Oct. 22, 2014) (*quoting Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

The qualified immunity doctrine protects government officials from civil liability for damages based upon the performance of discretionary functions if the official's conduct did not violate a clearly established constitutional or statutory law of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 230, 129 S. Ct. 808 (2009); *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

Courts use a two-prong analysis to determine whether a defendant is entitled to qualified immunity. The court must decide 1) whether the plaintiff has alleged a violation of a constitutional right and 2) whether the government official acted objectively unreasonably in light of "clearly

established" law at the time of the incident. *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017), *cert. denied sub nom. Surratt v. McClaran*, 138 S. Ct. 147, 199 L. Ed. 2d 37 (2017) (*citing Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). To be "clearly established" for purposes of qualified immunity, "[t]he contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016).

*Discussion and Analysis*

The Defendants' Motion for Summary Judgment [55] and Defendant Curlee's Motion to Dismiss [59] on the basis of qualified immunity request summary judgment on the following grounds. First, the Defendants' argue the Plaintiff cannot show that the actions of Curlee violated his clearly established right to Procedural Due Process. Second, the Defendants' argue that the Plaintiff cannot established a prima facie case of race discrimination claim under Section 1983 and argue that this claim must fail as a matter of law. Third, the Defendants' argue that the Plaintiff failed to support his First Amendment retaliation claim with competent evidence. Finally, the Defendants' argue that the Plaintiff cannot prove his state law breach of contract claim.

1. Fourteenth Amendment Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment states, in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. To invoke the protections of procedural due process a plaintiff must have suffered a deprivation of life, liberty, or property. *Toler v. City of Greenville*, No. 4:96-CV-34-D, 1997 WL 332168, at *3 (N.D. Miss. June 4, 1997) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 548 (1972)). When a

property interest is taken, "some form of hearing is required" before a final deprivation of the interest. *Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 224 (5th Cir. 2008) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

> In order for a person to have a property interest within the ambit of the Fourteenth Amendment, he must "have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008); *Blackburn*, 42 F.3d at 936 (citing *Roth*, 408 U.S. at 577, 92 S. Ct. 2701).

"Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Toler*, 1997 WL 332168, at *3; *Ridgely*, 512 F.3d at 735; *Blackburn*, 42 F.3d at 936–37 (citing *Perry v. Sinderman*, 408 U.S. 593, 599–601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)). When a property interest is not based on a substantive federal law or statute, "the sufficiency of the claim of entitlement must be decided by reference to state law." *Toler*, 1997 WL 332168, at *3 (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); *Blackburn*, 42 F.3d at 937 n. 12). In the instant case, the Plaintiff claims he had a property interest in continued employment with the District. Because the Plaintiff's claimed property interest in this case is not based on substantive federal law or statute, Mississippi state law determines the sufficiency of the Plaintiff's claims.

A. Constitutional Violation

Turning to the first prong of the qualified immunity standard, to successfully allege a violation of his right to due process under the Fourteenth Amendment, the Plaintiff must demonstrate 1) that he was deprived of a property interest protected by the Fourteenth Amendment,

and 2) that the procedures relative to his termination were constitutionally deficient. *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012)(quoting *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir.1994)).

i.    Property interest

In his Complaint, the Plaintiff argues that he was deprived of a property interest because "any reasonable public school conservator in Mississippi knew or should have known that [the Plaintiff] was entitled to notice and a hearing" before termination. While a principal is typically entitled to notice each year before March 1 of nonreemployment under Mississippi Code Section 37-9-105, the section makes an exception for an interim conservator appointed pursuant to Section 37-17-6(14)(a). It is undisputed that at the time of the Plaintiff's employment, a conservatorship was in place with Curlee serving as the Conservator. Given that exception under Section 37-17-6(14)(a) applies, state law clearly indicates that the Plaintiff was not expressly entitled to prior notice of his termination.

Mississippi Code § 37-9-59 states, "a licensed employee in a conservator school district whose employment has been terminated under this section for good cause as determined by a conservator appointed by the State Board of Education shall not have a right to request a hearing [. . .] The Conservator has the right to immediately terminate a licensed employee under this section." Because the District was, in fact, under a conservatorship at the time of the Plaintiff's termination, state law clearly indicates that the Plaintiff was not entitled to a hearing regarding his termination. *See* [55-5] (conservatorship ending on July 1, 2017, upon the school board assuming full control of the District). Accordingly, once the District was placed under a conservatorship, the Plaintiff had no property interest in his continued employment with the District.

ii.    Constitutionally deficient

Even if the Plaintiff did have a property interest in his continued employment, thus requiring a hearing under state law, Curlee did in fact provide the Plaintiff with such an opportunity on June 2, 2017. The requirements of due process are satisfied "with even a short, informal opportunity" for an employee to present his side of the story to the individual having the final authority to make the employment decision. *Washington v. Burley*, 930 F. Supp. 2d 790, 803 (S.D. Tex. 2013). The Plaintiff's deposition testimony indicates that he was given the opportunity to be heard. As such, the June 2, 2017, meeting between the Plaintiff, Curlee, and Armistad satisfied any due process requirement to which the Plaintiff was entitled. *Myrick v. City of Dallas*, 810 F. 2d 1382 (5th Cir. 1987) (informal discussion with final decisionmaker regarding the incident on which a termination is based prior to termination is sufficient to satisfy the requirements of due process); *Browning v. City of Odessa*, 990 F. 2d 842, 844-45 (5th Cir. 1993) (informal pre-termination half-hour meeting between employee and final decision maker satisfied due process).

iii.    Conclusion as to the first prong of the qualified immunity standard

After reviewing the facts, the Court finds the Plaintiff failed to allege a legitimate claim of entitlement to a property interest in his employment and failed to show that the procedures relative to his termination were constitutionally deficient. As such, the Plaintiff has not adequately alleged a violation of his Constitutional rights under the Fourteenth Amendment and failed to meet his burden under the first prong of the qualified immunity standard.

B.  Whether the Defendant Curlee is entitled to qualified immunity on the Plaintiff's Fourteenth Amendment Due Process Claim

To overcome Curlee's qualified immunity defense, the Plaintiff must properly allege a violation of his right to due process under the Fourteenth Amendment and show that Curlee acted

objectively unreasonably in light of a clearly established law. Based on the evidence presented, and with no contradictory authority or arguments brought forth by the Plaintiff, the Court finds that the lack of a constitutionally protected property interest, and thus the lack of a constitutional violation, is fatal to the Plaintiff's due process claim and Curlee is entitled to qualified immunity. As such, summary judgment is granted in the Defendants' favor on this claim.

2.  Fourteenth Amendment Equal Protection Claim under Section 1983

The Plaintiff, on the first page of his Complaint, indicates his right to "be free from race discrimination and retaliation pursuant to the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983." Although the Plaintiff briefly raised this issue in his Complaint, he failed to brief the issue and did not include his race discrimination claim as a separate cause of action. As such, the Plaintiff's Complaint contains virtually no facts from which the Court can discern a *prima facie* case of race discrimination.

Because the Defendant seeks dismissal based on qualified immunity, the Plaintiff is subject to a heightened pleading requirement. *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991); *Jackson v. City of Beaumont Police Dept.*, 958 F.2d. 616 (5th Cir. 1992). Meaning, the Plaintiff must plead the Defendants alleged constitutional violations "with factual detail and particularity, not mere conclusionary allegations." *Wells v. Newkirk-Turner*, No. 3:13-CV-733-DPJ, 2014 WL 5392960, at *3 (S.D. Miss. Oct. 22, 2014) (*quoting Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)). Given the Plaintiff's lack of particularity as to his race discrimination claim, the Court finds that the Plaintiff has failed to meet his heightened pleading requirement. The Plaintiff also failed to bring forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d

265 (1986). Thus, Curlee is entitled to qualified immunity and summary judgment is granted in the Defendants' favor as a matter of law on this claim.

3. First Amendment Retaliation

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). "Indeed, the right to speak and the right not to speak 'are complementary components of the broader concept of individual freedom of mind'; any 'difference [between them] is without constitutional significance.'" *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 348 (5th Cir. 2017), *as revised* (July 3, 2017) (*citing Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796-97, 108 S. Ct. 2667, 101 L. Ed. 2d. 669 (1988)) (internal quotations omitted).

The Plaintiff claims his termination from the District was the result of retaliation for his refusal to smooth over Clays' selection as superintendent with the African-American community. The Plaintiff claims that in response to Curlee's request he refused to "muzzle the free speech of members of the African-American community in Aberdeen who opposed the selection of a white superintendent." *Brinsdon v. McAllen Independent School District*, 863 F.3d 338, 348 (5th Cir. 2017) (noting First Amendment rights include the right to be free from compelled speech.).

To invoke the protection of the First Amendment, a public employee must first establish that he spoke as a private citizen, and not pursuant to his official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). In adding this threshold question to the First Amendment retaliation analysis the Supreme Court held, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.*

A. Whether the Plaintiff engaged in protected speech

Whether a certain activity or speech is protected by the First Amendment is a question of law. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). If the Plaintiff's speech was pursuant to his official duties as Principal of Aberdeen High School, then he did not speak as a citizen for First Amendment purposes, and the Constitution does not insulate his communications from employer discipline. *See Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) ("Job-required speech is not protected."); *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016) (citation omitted). Thus, this Court must determine whether the Plaintiff's refusal to speak was pursuant to his official duties as Principal of Aberdeen High School.

"Under *Garcetti*, we must shift our focus from the content of the speech to the role the speaker occupied when he said it." *Davis v McKinney.*, 518 F.3d 304, 312 (5th Cir. 2008). "[T]he inquiry is a 'practical one,' and the controlling factor is whether the plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed." *Elizondo v. Parks*, 431 F. Appx. 299, 2011 WL 2534363, at *4 (5th Cir. 2011) (citing *Garcetti*, 547 U.S. at 421, 424, 126 S. Ct. 1951). "[T]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014).

The critical question in the instant case is whether the Plaintiff, as Principal of Aberdeen High School and pursuant to his official duties, was required to smooth over the selection of the new superintendent with the African-American community. *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (noting that activities required by one's position or undertaken in the course of performing one's jobs are activities pursuant to official duties.). The Fifth Circuit has defined "pursuant to official duties" as activities undertaken in the course of performing one's

job and considers factors such as job descriptions, whether the employee communicated with coworkers or with supervisors,[2] whether the speech was directed internally or externally, and whether the speech resulted from special knowledge gained as an employee.[3] *Rogers v. City of Yoakum*, 660 Fed. Appx. 279 (5th Cir. 2016); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

In his deposition, the Plaintiff stated his duties as Principal of Aberdeen High School included, "the safety of students, raising student achievement, helping students cultivate their life goals and meet the requirements of career readiness . . . being in a relationship with community members such as the local clergy, local businesses, in order to afford a true partnership between [the] town, the actual school system, and [Aberdeen High School]." The Defendants argue that the Plaintiff's speech was made pursuant to his official job duties as outlined in *Garcetti v. Ceballos* and is therefore not protected by the First Amendment. 547 U.S. at 421, 126 S. Ct. 1951.

> In *Garcetti*, Ceballos was acting pursuant to his official duties because he was performing activities required to fulfill his duties as a prosecutor . . . A prosecutor is hired to assess search warrants and write recommendations on when to exercise prosecutorial discretion. Thus, when Ceballos articulated his opinion about a case in a memorandum to his supervisor . . . he did exactly what he was required to do.

*Williams*, 480 F.3d 689, 693.

The Defendants' argue that the Plaintiff's interaction with the community was pursuant to his official job duties for three reasons. First, the Plaintiff worked with Curlee on community relations for three years. Second, the Plaintiff acknowledged that his job duties as Principal included community relations and fostering a partnership between the town and the school. Finally,

[2] It is not dispositive that the speech was made within the workplace. *Williams v. Riley*, 275 Fed. Appx. 385, 384 (5th Cir. 2008).
[3] Neither is it dispositive that the Plaintiff's speech concerned a matter of employment. *Id.*

the Defendants' argue that "had Plaintiff not been an employee of the District and particularly, an administrator in the District, such a directive would not have been given to him."

While certainly a factor to be considered, "[t]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti* 547 U.S. 410, 126 S. Ct. 1951 (2006). In fact, the First Amendment protects some expressions related to the speaker's job. *Garcetti*, 547 U.S. 410, 419, 126 S. Ct. 1951 (2006). In *Pickering*, the Supreme Court rejected the attempt of school administrators to "limit[t] teachers' opportunities to contribute to public debate." 391 U.S. 563, 573, 88 S. Ct. 1731. The Supreme Court's approach "acknowledged the necessity for informed, vibrant dialogue in a democratic society." *Garcetti*, 547 U.S. 410, 418, 126 S. Ct. 1951 (2006). Similarly, the Supreme Court has also held, "[w]ere [public employees] not able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinion as it is the employees own right to disseminate it." *San Diego v. Roe,* 543 U.S. 77, 82, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) *(per curiam)*(citation omitted).

The Defendants' argument that because the Plaintiff's speech was communicated privately to his employer he was speaking pursuant to his job duties is not well taken, as Constitutional freedom of speech is not lost when an employee communicates privately instead of spreading his views before the public. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415, 99 S. Ct. 693, 697, 58 L. Ed. 2d 619 (1979).

Finally, while the Plaintiff may not have been asked to smooth over Clay's selection as the superintendent but for his employment, his refusal to comply with the request required no special

knowledge as Clay's selection had already been announced at the time of the request. These cases, when viewed as a whole, distinguish between speech that is "the kind of activity engaged in by citizens who do not work for the government," and activities undertaken in the course of performing one's job. *Garcetti*, 547 U.S. 410, 425, 126 S. Ct. 1951 (2006). Here, private citizens did engage in speech similar to that of the Plaintiff by refusing to support Clay as superintendent. Given the facts provided, there are several genuine disputes of material fact as to whether the Plaintiff engaged in protected speech. As such, summary judgment on this threshold issue alone is inappropriate and this Court shall discuss the Plaintiff's retaliation claim in full.

B.  Retaliation

As noted above, to overcome qualified immunity, the Plaintiff must allege 1) a violation of his First Amendment right to be free from retaliation for engaging in protected speech and 2) that the Defendant acted objectively unreasonably in light of a clearly established law. *See Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017), *cert. denied sub nom. Surratt v. McClaran*, 138 S. Ct. 147, 199 L. Ed. 2d 37 (2017).

To establish the requisite First Amendment violation, a plaintiff must show that the (1) plaintiff suffered an adverse employment decision, (2) plaintiff's speech involved a matter of public concern, (3) plaintiff's interest in commenting on matters of public concern outweigh any interest the employer has in promoting efficiency, and (4) plaintiff's speech was a substantial or motivating factor in the employer's adverse action. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 380 (5th Cir. 1999); *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quotations and citation omitted). Once a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that it would

have taken the same adverse employment action even in the absence of the protected speech. *Mt. Healthy City Sch. Dis. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). An employee can, however, refute that showing by presenting evidence that "his employer's ostensible explanation for the discharge is merely pretextual." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).

Assuming for purposes of summary judgment that the Plaintiff could establish a *prima facie* First Amendment retaliation claim, the Defendants have provided unrefuted summary judgment evidence that the Plaintiff would have been terminated for "failure to refrain from falsifying records (payroll/time sheet information) or directing others to do so in violation of Standard 2.2(b) of the Mississippi Code of Ethics" regardless of his protected speech. "[E]ven if we assume the exercise of protected first amendment activity played a substantial part in the decision to terminate an employee, the termination is not unconstitutional if the employee would have been terminated anyway." *Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000) (quoting *White v. South Park Indep. Sch. Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982)) (internal quotations omitted). The Plaintiff wholly failed to bring forth evidence that his termination was pretextual or that the Defendants' reasoning is false. Without such evidence, the Defendants have successfully established a *Mount Healthy* affirmative defense by offering unrefuted evidence that the Plaintiff would have been terminated regardless of his speech.

Based on the evidence and argument presented, and with no contradictory authority or arguments brought forth by the Plaintiff, the Court finds that the Plaintiff failed to show a causal connection between his speech and his termination, and his First Amendment retaliation claim fails. Accordingly, Curlee is entitled to qualified immunity and the Defendants' are entitled to summary judgment as a matter of law on the Plaintiff's First Amendment retaliation claim.

4.   State Law Breach of Contract Claim

Finally, the Plaintiff claims his two contracts with the District were unlawfully terminated on June 2, 2017. Specifically, the Plaintiff's 2016-2017 contract with the District was set to expire on June 30, 2017, and his 2017-2018 contract was set to commence on July 1, 2017.

In order to prevail on a breach of contract claim, a plaintiff must prove only, by a preponderance of the evidence, that there was (1) an existing and binding contract and (2) that the defendant breached the contract. *Business Communications, Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012). The Mississippi Supreme Court has recently held that whether a "plaintiff 'has been thereby damaged monetarily' is *not* an element of a breach-of contract claim." *Id.* at 1226 (overruling *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)).

The Plaintiff had a valid contract of employment with the District, thus satisfying element one of his claim. Whether or not the Defendants' breached the contracts by terminating the Plaintiff is closely connected with the Fourteenth Amendment Due Process claim. The Court granted summary judgment to the Defendants' on the Plaintiff's due process claim finding that the Defendants' were authorized to terminate the Plaintiff's employment under Mississippi Code Section 37-17-6. It follows that the Defendants' were also authorized to terminate the contract under state law. In fact, the pertinent section of the Plaintiff's 2017-2018 contract states in relevant part, "[t]his contract is subject to being terminated immediately prior to the end of the school year by a Conservator appointed by the State Board of Education in a conservatorship school district established pursuant to Section 37-17-6 and/or Section 37-17-13 of the Mississippi Code."

Thus, the Plaintiff has failed to establish the Defendants' breach of his employment contracts and the Defendants' are entitled to summary judgment as a matter of law.[4]

*Conclusion*

For all of the reasons explained above, Defendant Mac Curlee's Motion to Dismiss [59] on the Basis of Qualified Immunity is GRANTED. Defendants' Motion for Summary Judgment [55] is GRANTED. Defendant Curlee's Motion to Grant [63] Defendant's Motion to Dismiss on the Basis of Qualified Immunity as Confessed is DENIED as moot. With no claims remaining, this case is DISMISSED with prejudice.

So ORDERED on this the 24th day of September, 2018.

/s/ Sharion Aycock
UNITED STATES DISTRICT COURT JUDGE

---

[4] "Qualified immunity is only a defense to *federal*, not state claims." *Boisseau v. Town of Walls, Miss.*, 138 F. Supp. 3d 792, 806 (N.D. Miss. 2015).